22-1109. Could someone close the back door, please? Good morning. May it please the court. My name is Bastien Kane. I'm appearing today on behalf of the Plaintiff Appellant, Susan Cleveland, Board of Counsel, my colleagues, on behalf of auto-owners. I want to start this way. This was a case that was removed to federal court. It's under diversity jurisdiction. Under the Erie Doctrine, absolutely, Colorado's substantive law applies. Under Colorado's substantive law, in order for an insurer to vitiate, in order for coverage under an insurance policy to be vitiated, two things have to happen. Number one, there has to be a failure to perform. And number two, an insurance company must establish that the failure to perform, in this particular case, the non-cooperation, was material and substantial. And not only that, but that they were materially and substantially disadvantaged. And what does that mean? That means that they were prevented from being able to investigate the case or defend the claim. Now, I'm scratching my head as to why we're here today. The auto-owners filed this motion for a summary judgment two months before discovery, I'm sorry, two months before discovery cutoff, three months before the dispositive motion deadline. I didn't hear the last part. Say that again. Auto-owners filed this motion for a summary judgment two months before the end of discovery cutoff, three months before the dispositive motion deadline originally. No 30B6 deposition had been done. Expert disclosures hadn't been exchanged. No rebuttal expert disclosures had been exchanged. No depositions of experts had been done. None of those things. So, what did Cleveland do? Cleveland, following the guidance of the U.S. Supreme Court in Celotex v. Catrad, filed a Rule 56D motion. Because the summary judgment motion was premature, Cleveland filed a motion for an extension of time to do additional discovery. That's exactly what the Supreme Court says you do when there's a premature motion for a summary judgment. That's what Cleveland did. And filed it well within the time limit. It wasn't late. Nothing like that. So, nine months and 18 days passed. And what happened in that nine months and 18 days? The 30B6 deposition had been taken. I'm sorry? I'm sorry. I know it was a rhetorical question, but I'm trying to answer your question. In one of the answers, well, the 30B6 deposition had been completed. And after all, in your 56D motion, the only ground that had been asserted was the 30B6 deposition had been completed and there was additional time to do that. And then there may be additional discovery that emanates out of that 30B6 deposition. So, that nine-month period had allowed the 30B6 deposition to be completed and presumably any follow-up discovery that had emanated out of answers to the 30B6 deposition. So, why isn't that exactly what happened in Alpine Bank? That the allowance of the ability to supplement the Rule 56 response, you didn't do that. And so, why wasn't it within the discretion of the district court to say that I'm going to deny the motion to stay under 56D, just like Alpine Bank? Well, I'll be honest with you. I don't know the facts of Alpine Bank. But I will say this, is your characterization of what happened here is not what happened here. And let's start with the Rule 56D motion. Rule 56D motion, and you'll find it in volume three of the appendix, I believe at page 71, 72, that right around there. What you're going to find is that Mr. Balich, on behalf of Miss Cleveland, asked for additional time to do the 30B6 deposition and also to do additional discovery emanating out of the 30B6. And specifically said in the request for relief, 20 days past discovery cutoff. That's exactly the relief that was requested. Yes, we all know that. But my question is, when you ask for, whatever you ask for is whatever you ask for. But I don't know that that makes a hill of beans difference. The motion for a stay, you're asking for relief that was totally disconnected to the grounds for the stay. The grounds for the stay was just what you said. The 30B6 deposition hadn't been taken. There was additional time for that, and there was a need for additional discovery that would have grown out of the 30B6 deposition. Now, in your prayer, you did say, we want to have 20 days until after the discovery cutoff date. But if you were the district judge and you read that request, what would you say? Well, wouldn't you say, well, they asked for 20 days after the discovery cutoff date had been completed, but why? They don't need anything other than the 30B6 deposition and the discovery that grows out of the 30B6 deposition. Wouldn't you say that if you were the district judge? I would not agree. Okay. Here's why. During that time period, the parties were actively litigating and actively engaging in discovery, and there were delays. There was a previous delay based on the 30B6 and fighting over the topics. Then after that, there was extensions of deadlines for the expert disclosures and those sorts of things. And I want to make this important point. There were five times in this case where the parties filed unopposed motions. Both Cleveland and Ottawa filed unopposed motions to extend these deadlines, right? Those all got filed with the district court. And if you look at the record, if you look at the record here, the district court was a participant in all of those and referred them out to Magistrate Judge Newright. So the district court knew that the parties were actively continuing to engage in the very discovery that was mentioned or that was contemplated by the Rule 56D motion. So I hate to use the word disingenuous, but it's disingenuous. I believe it was disingenuous for the court to say, well, you only asked for completion of the 30B6 deposition. That was clearly a clear error of fact, by the way, which demonstrates an abuse of discretion in ruling on the, in her denying of the, I'm sorry, in the district court's denial of the Rule 56D motion. That was a clear error of fact. And I think we just did a pretty nice job demonstrating that in the briefs, and I'm not going to belabor that here. But it was a clear error of fact. But turning back to the other, it was also an error of law. The other reason the district court gave was it said, look, you know, the plaintiff doesn't need any discovery to demonstrate its performance element. Well, okay. That's actually factually true, isn't it? Well, here's the thing about that, Your Honor, is, you know, I scratched my head a little bit when this case came to me. Because, you know, I read the, I read the motion for summary judgment, and I said to myself, what on earth is going on here? Auto owners specifically admitted in their statement of undisputed facts that Ms. Cleveland performed that. Now, I mean, we've read that argument, but on your, but my question, and maybe I asked it poorly, but when you said that the judge got it wrong, that the plaintiff knows what she did and what she didn't do, that's, I'll just say it, that is factually correct, isn't it? Now, you have a separate argument that the defendant admitted that she, that she satisfied the, you know, the, that she provided everything that she needed to do and that there was an admission from the defendant. But it was factually true that she knew exactly what she had done and not done. I mean, that's all the judge said, right? I mean, you're going to read it that narrowly? I thought that's what you had said. I mean, I'm not reading it narrowly or broadly. I just, I thought I was paraphrasing you. Well. What did the judge say? Tell me what the judge said, what is factually inaccurate about what the judge said. Well, I mean, the bottom line here is that the performance element in and of itself doesn't get auto owners anywhere. Under Colorado law, it's clear that for them to officiate coverage, they have to, they have to establish they've been materially and substantially disadvantaged. Now, if you look at the motion for summary judgment itself, okay, yeah, the, the, there's about two pages on performance, right? And then, and then auto owners spend the rest of their time talking about non-cooperation in, in the second half of the analysis, right? So for the district court, for the district court to say, well, you know, plaintiff didn't need anything else with respect to the performance element. Let's think that through for a moment logically. Now, assume that Ms. Cleveland had responded to the motion for summary judgment by saying just that. We didn't respond, right? We, like, basically what the district court said is you followed it through, right? Well, then there would be an entire rest of the motion that the plaintiff would not have been able to respond to. You know why? Because how, and in the manner in which auto owners claim to be materially and substantially disadvantaged in their investigation, that is within the control of auto owners, not Cleveland. Cleveland can't reasonably know that. And when you look at the material of the record, I believe we did a good job of putting all this in the brief as well. The district court ignored the fact, number one, that I already said, that, that auto owners themselves admitted that Cleveland performed. All this motion really is, is Cleveland auto owners doesn't like how Cleveland performed. Not that they had just acknowledged that she had responded to one of the 17 letters. Am I wrong about that? Maybe, maybe you're right. I mean, I was going pretty back deep in my memory. And so if, if, if, if it ensured over a period of one year or nine months response to one, one out of 17 requests, it never provides a medical release. That in itself as a matter of law is, is an addition that she cooperated. Well, let me back up. That's not the only thing they admitted. They also admitted that they received medical records, right? Just, just a few, just a few, not everything they asked for. Oh, well, right. But under Colorado law, that's irrelevant. I mean, it's irrelevant that they don't get everything they want. All these cases, all these cases that involve non-cooperation, they're founded on the premise that an insurer doesn't do every little thing that an insurance company asks it to do. And that's really what goes on here. The insurance company, they just did not form letters every month. It doesn't matter if you sent them a pile of records three days before. It doesn't matter if you got them on the telephone. It doesn't matter. They just sent out letters. That's what they do. They also. Well, I think certainly in this case, it came to matter, didn't it? I don't believe it did, Your Honor. Well, the court ruled against you for lack of cooperation. Right, but the court ruled against us. Like, she erred in, I'm sorry, the district court just erred as both a matter of law and a matter of fact in denying our Rule 5016 motion, right? Because we have, because we have a defense. Ms. Cleveland has a defense to this. And the error there is that you asked for time and you were not given full time. Is this the 20 days add-on that you had in your prayer? Is that what we're looking at here? Well, there's that. And also, we weren't done doing discovery. We weren't done. I mean, there was expert reports, but there were still depositions set to be completed. Right. I mean. But you hadn't in this interim responded to the motion for summary judgment. Is that right? I'm sorry, Your Honor. You had not in this interim responded to the motion for summary judgment? Well, no, we hadn't. And to be perfectly honest, Your Honor. That's pretty risky business, isn't it? What's that? That's pretty risky business, isn't it? Well, I think you have to think back to the time period we were in. I mean, we were permanently in the grips of the COVID pandemic. And the vaccine adjustment rolled out. And they were doing it in stages at that time. And absolutely, especially considering the fact that the district court, that the district court itself, was a participant in all these motions to extend the deadline. And by the way, both the magistrate judge and the district court judge, in overriding Otto Hunter's objection to the 30B6 deposition notice, everyone was on the same page that the non-cooperation piece mattered. And so for the district court to all of a sudden say, well, you know, nobody ever objected to this all along the way. And then nine months and 18 days later, we get a ruling denying the 56D motion. I'm sorry. Yeah, denying the 56D motion and granting the summary judgment motion. Now say, this court has said before, the better practice and what should happen is, is that a district court judge should rule on a 56D motion before it rules on summary judgment. And to the extent that the district court didn't do that here, we argue that's an abuse of discretion. That's, that, that, you know. Well, had all discovery, all the extensions that you'd asked for for discovery, had they expired by the time the district court ruled on the motion for summary judgment? Absolutely not, Judge. Absolutely not. Okay, that's the 20 days, the 20 days. I'm sorry. Is it the 20 days that we're talking about? The discovery cutoff had been moved to October 31st. And the district court judge, the district court judge entered its motion denying the 56D motion and granting summary judgment on September 23rd. And it specifically said in there that all the discovery requested in the motion had been completed for five months. Thank you. Thank you. Thank you. May it please the court. John Marinas for Applee Auto Owners Insurance Company. The judge said the relevant discovery was completed. The only relevant discovery specified in the 56D affidavit to support their motion to stay was to request a 30B6 deposition of owner, of auto owners in order to explore the prejudice issue. They also said in that 56D motion that they also needed some other baseline discovery as well. And under the ruling in Wilson, which is cited in the papers, a 56D affidavit and motion have to be robust. They have to be specific. You can't just say I need baseline discovery in order to respond to a pending motion for summary judgment. The judge was very clear that she said the relevant discovery that you wanted was completed, and that was the 30B6 deposition of auto owners. And I really disagree with the context that was painted here. Expert disclosures had been completed according to the court's record. When you look at what was in front of Judge Arguello at the time she entered the summary judgment order, the only remaining extension was to do a rebuttal expert, and then the last one made was to take depositions of two of auto owners' experts. One was a medical doctor, and one was an accident reconstructionist. You don't need a deposition of an accident reconstructionist and a medical doctor in order to respond to an issue of prejudice. That extension for those two depositions only was the only basis for extending the discovery cutoff to October, and it was October 30th was the extended cutoff date. So discovery was extended to October 30th. It was only to take two expert depositions that have nothing to do with being able to respond to a summary judgment on the prejudice issue. And the Rule 56D motion did not specify that they needed to take these two expert depositions in order to respond. They only said we need the 30B-6. They got the 30B-6. They sat on it for three months, and the judge ended up ruling. And I think there's a case out of the Fifth Circuit, a BIATI. It's a 2001 case, but Fifth Circuit said if you're going to ask to suspend discovery, you're going to do it at your own risk. And that's something that's repeated on these 56D motions. You have options when a summary judgment is filed. You can challenge the summary judgment head on and say, I, Ms. Cleveland, performed, and there is therefore a genuine fact issue here. They could have alternatively argued auto owners didn't meet their burden of proof under the summary judgment standards to be entitled to summary judgment. Kind of a third option that they're allowed to do is say, time out. I need more time to do discovery. But under Rule 56D in the case law, especially the Wilson case, says if you're going to do that, you've got to be specific. You've got to be robust. And the specific discovery that was requested in the 56D motion and the affidavit to support saying was the 30B-6 deposition of auto owners. They took it in May. And what was in front of Judge Arguello when she's looking at that, she sees a status report saying the 30B-6 deposition is scheduled for May. She waits until the end of September to make her ruling on both the 56D motion for stay as well as the 56D motion for summary judgment. The plaintiff did not file something after the 30B-6 motion saying, hey, Judge, here's a status report. The 30B-6 opened a lot of bunny trails that I need to explore with more discovery to look into prejudice. They didn't do that. They could have done that. They didn't do that. They stuck to their guns of saying, I need a 30B-6 deposition. That was their chosen strategy. And the problem is they just didn't take it all the way through. That was their chosen strategy. One thing that the judge did say, I think, is that the parties had stipulated that the discovery would be completed, I think, by September. Is that right? At one point, yes, Your Honor. And she says that. And the ruling on 56D is a matter of discretion. And so if a court does, and that was factually inaccurate, if a district judge in exercising her discretion relies on a factually incorrect statement, can we really be assured that the district judge would have reached the same decision, would have exercised her discretion in the same way that she did in the absence of that factually inaccurate statement about the timing in which the discovery would be completed? Her assumption when she issued her order on summary judgment is that discovery had been completed earlier in September. She issues her order on September 23rd of 2021. It goes back, and my response would be this, is that the only thing, if that was clear error, the clear error was that the discovery was kicked to October 30th for the purpose to take these two depositions of a medical doctor and an accident reconstructionist that have no bearing whatsoever on how to be able to respond to a summary judgment about your lack of cooperation and the prejudice that owners had suffered as a result of it. Owners, prior to them filing a lawsuit, owner had given three coverage position letters to Ms. Cleveland saying, you did not respond to a ton of our letters, you did not notify us of a lawsuit you filed against the underlying at-fault parties, and you didn't tell us for 480 days, and by the time you told us about the existence of that lawsuit, auto owners tried to jump in and intervene in that lawsuit to protect its rights, and that trial court said, no, we're too close to trial, you can't do it, the discovery's cut off, you can't intervene. And then that underlying trial got a mistrial, and then auto owners even filed a motion to reconsider to try and jump in to intervene in the lawsuit to protect its interests. Assuming what you say is correct, and that is these depositions after the 30B6 were really irrelevant to performance, couldn't a plaintiff be thinking that even though there's a pending summary judgment motion after the 30B6, the discovery cutoff is still not until September, so there's no emergency here to get the response to the motion for summary judgment. I guess my response to that is the case law that says, if your decision, your strategy is to file a 56D, you're rolling the dice of whether or not you're going to be granted that 56D. I'm talking about the discovery cutoff, which is a court order, is not until September. So if I wait from May until September, thinking the discovery, you file the response to summary judgment after discovery is cut off. That's assuming you know what the trial judge is going to do, and as an advocate, you do that at your own risk. You have a floating summary judgment, you have a case-killing motion pending against you, and you're hoping and assuming that the judge is going to rule the way you want to, or interpret her orders the way you think that should be interpreted. That's at risk, and that's, again, why this case is safe. Normally, in a pretrial order, you have dates set for deadlines for filing summary judgment and deadlines for responding. That didn't happen here. Well, the pretrial conference got vacated in this case because of the length of time that the 30B6 dispute was going on and the September 20th, 2020 ruling occurred. But yes, there was a scheduling order with original deadlines of what the discovery cutoff would be, and I agree that the parties can abide by that. Okay, but the initial discovery cutoff was changed, altered. Yes, Your Honor. And was it done by a court order? Yes, Your Honor. Okay. And that court order put it to September 23rd. It put it to, I think it was September 5th or something like that. Okay, early September. Sure. And then there was a motion filed saying we need more time to take these two depositions. The basis for requesting the discovery cutoff to get extended was those two particular depositions, but the way the order came out is that the discovery cutoff. Everything got upset here in the scheduling. Was there a subsequent order as to responding to the summary judgment motion? Or was there any subsequent order that did scheduling for summary judgment? Not on the dispositive motion deadline. All of the moving parts, so to speak, in the scheduling order all dealt with discovery or moving experts. So the scheduling for dispositive motions, that deadline expired long before the discovery cutoff. I guess technically speaking, if you want to look at it that way. That statement could be made, but that is not an argument that's ever been made by plaintiff in any of their filings. All right. But once you've reached this cutoff that we're saying is September 5, roughly, and you said there was another motion filed by the plaintiff? It was actually an unopposed motion for them to take auto owner's expert, those two depositions. So that's what the district court, I guess, thought. You don't need this for the issues at hand. I mean, that's your argument today. Correct, Your Honor. And if that's the specific discovery they needed in order to respond to the summary judgment, that has to be specified in your 56D motion. Or at least file an amended 56D motion or a supplemental 56D motion. Well, isn't that what they were doing when they filed the subsequent motion? This motion that was filed by the plaintiff after the September 5 cutoff, aren't they saying, A, we still need more discovery? In order to take two depositions of two experts. Yes. That's what they were requesting, Your Honor. Okay. That was in the motion. Is the order granting the motion limited to those two depositions? No. The order was more general. It said discovery cutoff is extended to October 30th. It's the order that the magistrate judge entered. Correct, Judge Henry Breyer, magistrate. And I guess I'd like to back up now. What is cooperation in Colorado? And it's been described in a few cases. And I want to make sure the court has a good understanding of this. In Hanson v. Barmore, the court said, due to Colorado substantive state law cases, cooperation requires joint operation and common labor. Joint operation or common labor. That is what cooperation is. So when auto owners are sending out 17 letters asking for medical records, is she still treating? If she is, please provide those records. For over a year and a half and asking for that information, cooperation requires joint operation or common labor. Another case, the Brekke case, 105 P. 3rd, 177, jump page 189, talks about the insured owes, duties of cooperation, and reporting to the insurer. And finally, the Fisher v. State Farm case, the Court of Appeals case, not the Supreme Court case, 419, jump page 993, it approved the jury instruction to say that the duty of cooperation also exists and for the policyholder to assist with the claim. Now, there's this idea, I think, in their mind that insurance companies, there's a secret database where they can get everyone's medical records or they can just call a doctor and say, hey, violate HIPAA and talk to me about this. I'm a stranger, you don't really know me, but talk to me about your patient, the treatment, and the injury. There's no secret place to get that stuff. In the claim process, you have a give and take, and you need this information from the policyholder to say, what is your claim, what are your damages, are you impaired? We haven't seen a medical record saying you're impaired. Impairment damages can be a huge significant amount. Never got any information about that. In October 2017, when Ms. Cleveland's attorneys did respond to one of the requests for auto owners, that October 2017, that's what they're saying, auto owners, and especially for summary judgment, that's an admission that she performed because she submitted this email in October of 2017. Read, please read that October 2017 email. It is located in Volume 7, the sealed volume on page 11. That email from the lawyer's office says, We do not know for certain if there will be UM UIM exposure. It further says, Attached are medical bills and records to be paid from her med pay, her med pay coverage. This is significant. These are sophisticated lawyers talking about what they're seeking and what they're wanting from the insurance company. Here they're saying, they're not even saying pay these under UIM coverage, they're saying pay it under med pay coverage. This is important because in Calderon, you cannot set off your UIM limits through med pay payments. For example, under med pay coverage, it's usually around $5,000 or $10,000. Let's say you have a $25,000 UIM policy. If an insurance company pays five grand on the med pay, the UIM doesn't come down from 25 down to 20. The insurance can't say, hey, we paid $5,000 in med pay over here, therefore your UIM limits shrink. That doesn't happen. Calderon said you can't do a set off. So they can make a claim for entitlement to UIM benefits, and here their October 10, 2017 email saying, we don't know for certain if we have UIM exposure to provide here, but please pay these medical bills under med pay. And that's a huge omission. We just asked for the court to affirm the rulings of Judge Arguello and the trial court. Mr. Marinus, I'm reticent to do this, ask a completely irrelevant question, but my curiosity has gotten the best of me. Why did you need an accident reconstruction expert if you've already had Prime Window and Mr. Abbey prevail on the negligence issue? Because we weren't bound by the findings of the trial court, because we were prejudiced and couldn't intervene, and under Briggs and Brecke, the insurance, the UIM carrier is not bound by those findings. So in their UIM claim, in this claim, we would have had a trial on what were the liability and damages that they suffered and did it exceed enough to force the UIM benefits to be owed. That's why my curiosity should have been suffocated. That's all right, Your Honor. Thank you. Thank you. Nicky is the appellant out of time. All right. Thank you. It was very well presented by both sides. This matter is submitted.